Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Attorneys for Individual and Representative*
*Plaintiff Victor Pariso*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR PARISO, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>  vs.<br><br>THRESHOLD PHARMACEUTICALS, INC., JEFFREY W. BIRD, BRUCE C. COZADD, DAVID R. HOFFMANN, WILFRED E. JAEGER, GEORGE G. C. PARKER, DAVID R. PARKINSON, and HAROLD E. SELICK,<br><br>      Defendants. | Case No. 17-cv-3557<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Victor Pariso ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934. In support of this Class Action Complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action on behalf of himself and the public stockholders of Threshold Pharmaceuticals, Inc. ("Threshold" or the "Company") against the Company and Threshold's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.      On March 17, 2017, Molecular Templates, Inc., ("Molecular") and the Company announced that they had entered into an Agreement and Plan of Merger ("Merger Agreement") pursuant to which Trojan Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Threshold, will merge with and into Molecular, with Molecular surviving as a wholly owned subsidiary of Threshold in an all-stock transaction (the "Proposed Transaction"). Pursuant to the terms of the Merger Agreement, current Molecular Templates stockholders would own approximately 65.6% of the combined company, with the remaining 34.4% owned by stockholders of publicly traded Threshold. The combined company will be publicly owned and will trade its stock on NASDAQ Capital Market under the symbol MTEM, with Threshold changing its name to Molecular Templates.

3.      Threshold stockholders and optionholders will continue to own and hold their existing shares of Threshold common stock and options, respectively. Threshold stockholders are being asked to approve the issuance of shares of Threshold common stock to Molecular stockholders pursuant to the terms of the Merger Agreement.

4.      Concurrent with the execution of the Merger Agreement, Threshold and Molecular entered into an equity commitment letter with Longitude Venture Partners, III, L.P. ("Longitude"), pursuant to which Longitude agreed to purchase $20.0 million of equity securities from the combined company immediately following the consummation of the Proposed Transaction through a private placement or the concurrent financing. Subsequent to the execution of the Merger Agreement, Threshold

1

and Molecular have obtained equity commitment letters from additional investors in a form substantially similar to the Longitude equity commitment letter for an additional $20.0 million of equity securities.

5.      According to the financial analyses conducted by Threshold's financial advisor, based upon the exchange ratio of 0.96688 in the Merger Agreement, Threshold will issue to stockholders of Molecular approximately 17.2 million shares of Threshold common stock (as adjusted for the reverse stock split of 8:1).  Ladenburg calculated the implied equity value, using the closing stock price of Threshold on March 15, 2017, of Molecular was approximately $83.7 million.

6.      On May 15, 2017, Defendants issued materially incomplete and misleading disclosures in the Form S-4 Registration Statement (the "Registration Statement") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.  The Registration Statement is deficient and misleading in that it fails to provide adequate disclosures of all material information related to the Proposed Transaction.

7.      Accordingly, Plaintiff alleges herein that Defendants have breached their fiduciary duties and violated Sections 14(a) and 20(a) of the Exchange Act in connection with the filing of the Registration Statement.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

9.      The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in, and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received

substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

11.     Plaintiff is, and has been at all relevant times, the owner of shares of Threshold common stock.

12.     Defendant Harold E. Selick ("Selick") joined Threshold as Chief Executive Officer in June 2002 and has served as a member of the Company's board of directors since his appointment.  On March 16, 2017, Selick resigned as the Company's Chief Executive Officer, effective March 31, 2017. Following his resignation, Selick continues to serve as a member of and Chairman of the Company Board.

13.     Defendant Wilfred E. Jaeger ("Jaeger") has served as a member of the Company Board since 2001.  On March 16, 2017, the Company's board of directors appointed Jaeger to serve as interim Chief Executive Officer of the Company, effective April 1, 2017.

14.     Defendant George G.C. Parker ("Parker") has served as a member of the Company's board of directors since October 2004.

15.     Defendant Jeffrey W. Bird ("Bird") has served as a member of the Company's board of directors since November 2008.

16.     Defendant David R. Hoffmann ("Hoffman") has served as a member of the Company's board of directors since April 2007.

17.     Defendant David R. Parkinson ("Parkinson") has served as a member of the Company's board of directors since 2010.

18.     Defendant Bruce C. Cozadd ("Cozadd") has served as a member of the Company's board of directors since December 2005.

19.     Defendants Cozadd, Parkinson, Hoffman, Bird, Parker, Jaeger, and Selick are collectively referred to herein as the "Board" or the "Individual Defendants."

20.     Defendant Threshold is a clinical-stage biopharmaceutical company that has historically used its expertise in the tumor microenvironment to discover and develop therapeutic and diagnostic agents that selectively target tumor cells for the treatment of patients living with cancer. The Company is a Delaware corporation and maintains its principal offices at 3705 Haven Ave., Suite 120, Menlo Park,

California 94025. Threshold's common stock is traded on the NASDAQ under the symbol "THLD."

21.     The Individual Defendants and Threshold are referred to collectively herein as "Defendants."

## OTHER RELEVANT ENTITIES

22.     Molecular is a privately-owned clinical-stage oncology company focused on the discovery and development of novel, targeted, biologic therapeutics for cancer.

23.     Merger Sub is a wholly-owned subsidiary of Threshold and was formed solely for the purpose of carrying out the merger.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action individually and as a class action on behalf of all holders of Threshold stock who are being, and will be, harmed by Defendants' actions described herein (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

25.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

26.     The Class is so numerous that joinder of all members is impracticable.  According to the Form 10-Q Quarterly Report filed with the SEC on May 16, 2017, as of April 28, 2017, there were 71,591,518 shares of Threshold common stock outstanding.  These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

27.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, inter alia, the following:

(a)     Whether Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable harm were the Proposed Transaction consummated.

28.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

29.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

30.     The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

31.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

32.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

33.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FACTUAL BACKGROUND

### Company Background and Deteriorating Financial Condition

34.     Threshold is a clinical-stage biopharmaceutical company that has historically used its expertise in the tumor microenvironment to discover and develop therapeutic and diagnostic agents that selectively target tumor cells for the treatment of patients living with cancer.

35.     In pursuit of these goals, the Company has spent the last several years devoting substantially all of its research, development, clinical efforts, and financial resources to two therapeutic product candidates based on hypoxia-activated prodrug technology in the clinic: evofosfamide and tarloxotinib.

36.     Recently, however, Threshold has experienced a number of setbacks to its core business. As noted in the Registration Statement and related SEC filings, the Company's experimental drug tarloxotinib failed to meet Phase II drug trial thresholds and the Company halted all future development

of the drug. This disappointing outcome followed closely on the heels of disappointing results from its other experimental drug, evofosfamide, which was found to be unable to meet its primary endpoint of demonstrating a statistically significant improvement in overall survival in patients with soft tissue sarcoma or advanced pancreatic cancer. Although the Company is still proceeding with further clinical trials for evofosfamide, as well as other experimental drugs, the Company's recent struggles have had a significant impact on the Company's financial outlook.

37.     Given the limited development of evofosfamide, the Company's limited cash resources, and the additional capital and resources that would be required to pursue further development, the Company was placed in a precarious financial position. If the Company did not pursue a merger, it would need to rely on securing a collaborative or strategic arrangement for one of the Company's existing drug candidates to support its operations and its future development and clinical trial costs.

**The Sales Process**

38.     The Proposed Transaction is the result of a flawed process tilted in favor of Molecular and led by conflicted Defendant Harold E. Selick, who knew as early on in the process that he would serve as the Chairman of the Board of the combined company following a merger.

39.     The impetus for this merger can trace its origins to the disappointing results from two pivotal Phase III clinical trials of Threshold's principle drug, evofosfamide. The results of these trials conclusively showed that the drug was likely unable to meet its primary endpoint of demonstrating a statistically significant improvement in overall survival in patients with soft tissue sarcoma or advanced pancreatic cancer. Consequently, Threshold announced that it would not be pursuing further development of evofosfamide in soft tissue sarcoma and pancreatic cancer.

40.     These disappointing results were reviewed by Threshold's Board during a December 8, 2015 board meeting, and resulted in the Board choosing to explore a variety of strategic alternatives that could potentially enhance stockholder value. To that end, the Board proceeded to engage in discussions regarding a corporate restructuring involving the reduction of Threshold's employee headcount and a substantial reduction in evofosfamide development activities, and the potential retention of a financial advisor to assist Threshold in assessing its strategic options going forward.

41.     In December 2015, Threshold announced that it was implementing a workforce reduction

of approximately two-thirds of its workforce by December 31, 2015.

42.    In January and February 2016, Threshold management engaged in discussions with financial advisors on an informal basis to develop criteria for potential strategic alternatives and to evaluate candidates to serve as Threshold's financial advisor to conduct the process of identifying suitable third parties for potential strategic transactions, including licensing transactions and reverse mergers that would utilize Threshold's public company status to enable an attractive private company to access the public securities market.  This process culminated in Threshold meeting with representatives of three financial advisors in July 2016, including Ladenburg Thalmann & Co. Inc. ("Ladenburg"), regarding strategic alternatives, including funding additional trials, acquiring or in-licensing new products, and using its public listing for a reverse merger transaction with a private company that was interested in accessing the public securities market.  Threshold later retained Ladenburg as Threshold's financial advisor on August 30, 2016.

43.    Prior to the retention of Ladenburg, throughout the months of March, April, and May 2016, Threshold's senior management identified and conducted preliminary diligence on drug development candidates on over 40 potential licensing and acquisition opportunities, including clinical, regulatory, preclinical, intellectual property, and market opportunity information and commercial assessment work, including diligence of assets from two potential third parties for a strategic transaction, Companies A and B.  Both Company A and Company B, had previously been identified by the Board as potential third parties for a strategic transaction.  However, the Registration Statement fails to indicate whether the initial exploration of a strategic transaction with either Company A or Company B consisted of any contact between Threshold and the respective companies.  Instead, the Registration Statement merely notes that in April, senior management had meetings in Japan with six companies, the Registration Statement fails to disclose the identity of these six companies, and that in February the Board discussed Defendant Selick's existing relationship with Company A and Threshold director Defendant Bird's association with a venture capital firm with equity interests in Company B.

44.    Shortly after the retention of Ladenburg, the financial advisor presented Threshold with an initial list of over 400 possible reverse merger candidates.  From the initial list of approximately 400 companies, Ladenburg began an outreach to 42 companies with direct meetings or calls with senior

management teams under a two-way nondisclosure agreement.  Throughout the month of September 2016, nondisclosure agreements were executed by 16 of the 42 candidates.  These nondisclosure agreements did not include standstill provisions.  Following the execution of these agreements, the 16 interested parties were granted access to Threshold's data room.

45.     While this process was on-going, the Company continued to struggle financially.  In September 2016, Threshold announced its plan to implement a workforce reduction constituting approximately a quarter of Threshold's workforce by October 7, 2016.

46.     On October 17, 2016, the Board met via telephonic conference to consider the strategic alternatives then under consideration.  After discussing the various interested parties, the Board narrowed the selection of potential bidders to six candidates, including Company A, Company B, Company E, Company F, and Molecular, to proceed to the next round of bidding.

47.     These six companies were notified on October 20, 2016, that they had been selected to participate in the next round of the merger partner selection process.

48.     Five of the six companies, Company A, Company B, Company E, Company F, and Molecular, chose to proceed with data room access and diligence as well as an in-person presentation to members of Threshold's board of directors and management.  These presentations were presented to Threshold's management and members of the Board on November 9 and 10, 2016.  The focus of these presentations concerned the respective companies' drug development candidates, including clinical, regulatory, preclinical, intellectual property, and market opportunity information, commercial assessment work, financial models, management synergies, valuation, potential ownership splits and rationale for a merger transaction, as well as key milestones and cash projections to achieve these milestones.

49.     On November 14, 2016, Defendant Selick notified representatives from Molecular that they were chosen to continue its participation in the merger partner selection process.  That same day, Selick spoke with the Chief Executive Officer of Company A and indicated that Company A was a backup to the top company under consideration.  Interestingly, these actions were undertaken prior to the Board making any formal decision on the various merger candidates.

50.     On November 18, 2016, the Board met to review candidate evaluation materials from the five merger candidates that had made presentations.  After extensive discussions regarding the five

candidates and their respective presentations, Threshold's management recommended Molecular as the most favorable candidate because Molecular required a lower valuation, which would be favorable for Threshold's stockholders, appeared to have had better market potential for its products, and had a more favorable board composition.  This recommendation, which was presented to the Board during a November 18, 2016 meeting, resulted in the Board formally choosing Molecular as the most favorable merger candidate.  This decision was based in part on the fact that Molecular offered a valuable product candidate portfolio, possessed sufficient financial resources to allow the management team to focus on continued development and anticipated commercialization of products, and that following the merger, the management team and board of directors of the combined company would be comprised of representatives from each of the current board of directors of Threshold and Molecular.  Threshold's Board and management selected Company A as the backup merger candidate.

51.    Although the selection of Molecular as the most favorable merger candidate was based in part on the management team and the board of directors of the combined company being comprised of representatives from each of the current board of directors of Threshold and Molecular, the Registration Statement fails to disclose any negotiations that took place pertaining to the post-transaction employment of Defendant Selick and other members of Threshold management at any time during the negotiation process.  This is particularly troubling, in light of the fact that Defendant Selick, and/or members of Threshold's management (presumably including conflicted Selick), spoke and/or met with Molecular management multiple times regarding the potential transaction.

52.    While Threshold was in the process of exploring strategic alternatives, the Company's prospects of enduring as a stand-alone entity continued to suffer.  On November 11, 2016, Threshold received a notice from NASDAQ that the closing bid price for Threshold's common stock was below the $1.00 per share minimum bid price requirement for continued listing on NASDAQ and that Threshold had until May 10, 2017, to satisfy this requirement.

53.    Negotiations and due diligence between Threshold and Molecular continued throughout November and December, and on January 26, 2017, the Board met to review the ongoing discussions regarding the proposed transaction and corresponding due diligence efforts.

54.    Following this meeting, representatives from management of Molecular and Threshold,

counsel for both companies and representatives of Ladenburg continued to work on outstanding diligence items and finalizing the terms of the agreement. On February 16, 2017, following continued due diligence and negotiations between Threshold and Molecular, the Board held a conference call to review the diligence process with Molecular and to discuss the current terms of the draft of the merger agreement provided by Molecular.

55.     From February 16, 2017 through March 15, 2017, Threshold and Molecular, and their respective representatives, engaged in confirmatory due diligence and continued negotiations regarding a number of key issues in the Merger Agreement.

56.     On March 15, 2017, the Board met to discuss the terms of Molecular's final proposal. During this meeting, Ladenberg delivered its financial analyses of the consideration to be paid in the merger and confirmed that for the three preceding years Ladenburg had not had a relationship with either Threshold or Molecular or received any fees from Threshold or Molecular.

57.     Following the meeting, on March 15 and 16, 2017, the companies and their representatives finalized the outstanding terms of the merger agreement and ancillary agreements, including the equity commitment letter and the promissory note to be issued to Molecular. On March 16, 2017, Threshold's Board met to vote on the proposed transaction. At this meeting, representatives of Ladenburg delivered to Threshold's Board Ladenburg's opinion that the consideration to be paid in the merger was fair, from a financial point of view. Following further discussions relating to Molecular, its business and the terms of the proposed transaction to Threshold, the Board unanimously determined that it was advisable and fair to, and in the best interests of the Company and the Company's stockholders for the Company to enter into the merger agreement, and the approved the merger agreement and declared it advisable. The following day, the parties issued a joint press release announcing the merger.

**The Proposed Transaction**

58.     In a joint press release dated March 17, 2017, Threshold and Molecular announced that they had entered into the Merger Agreement pursuant to which Molecular will merge with a wholly owned subsidiary of Threshold in an all-stock transaction, thereby forming a combined company focused on the development of novel treatments for cancer.

59.     The press release states in pertinent part:

SOUTH SAN FRANCISCO, Calif. and AUSTIN, Texas, March 17, 2017 (GLOBE NEWSWIRE) -- Threshold Pharmaceuticals, Inc. (Nasdaq: THLD), a clinical-stage biopharmaceutical company developing novel therapies for cancer, and Molecular Templates, Inc., a privately held biopharmaceutical company, today jointly announced that they have entered into a definitive agreement under which Molecular Templates will merge with a wholly owned subsidiary of Threshold in an all-stock transaction. The transaction will result in a combined company focused on the development of novel treatments for cancer.

Longitude Capital, a U.S. based venture capital firm, will invest $20 million at the close of the transaction, subject to certain conditions, including the receipt of additional equity financing commitments of $20 million.

Molecular Templates' proprietary technology has been used to create a new class of biologic drug candidates known as Engineered Toxin Bodies or ETBs. ETBs have the affinity of an antibody, the ability to induce cellular internalization against non-internalizing receptors, and a novel mechanism of cell-kill (ribosome inhibition) in oncology. Molecular Templates is also using its technology to deliver foreign class I antigens into tumor cells to boost immune recognition of the tumor in a novel approach to immuno-oncology. The Molecular Templates technology has the advantage of being able to generate "off the shelf" therapeutics that do not require patient cell harvesting or transplantation.

Molecular Templates' lead product candidate, MT-3724, is an ETB that targets the CD20 cell surface antigen present in a variety of lymphomas and leukemias. A Phase 1 trial with MT-3724 in relapsed and refractory non-Hodgkin's lymphoma (NHL) has demonstrated good safety and efficacy in elderly, heavily pre-treated patients. In addition to MT-3724, Molecular Templates has preclinical programs targeting HER2 and PD-L1 and has received $15.2 million in new funding commitments from The Cancer Prevention and Research Institute of Texas for its program targeting CD38. Molecular Templates was previously awarded a CPRIT grant for $10.6M that has funded development of its MT-3724 program.

"The merger of our two companies provides Threshold shareholders with a significant equity stake in a biopharmaceutical company with a promising cancer therapy, MT-3724, as well as an innovative and unique technology platform that has generated preclinical drug candidates to treat multiple myeloma, breast cancer and melanoma," said Barry Selick, Ph.D. and Chief Executive Officer of Threshold. "Following an extensive and thorough review of strategic alternatives, we believe this transaction combines promising drug candidates, a solid management team and the resources to create significant value for shareholders and important new cancer therapies for patients."

Eric Poma, Ph.D., Chief Executive Officer of Molecular Templates, commented, "The combined company will have two exciting clinical-stage compounds in evofosfamide and MT-3724 and a unique biological platform with a differentiated mechanism of action in oncology. Longitude's commitment to invest in the company is a strong testament to the promise inherent in the combined companies' clinical assets and technology platform."

11

Threshold's financial advisor for the transaction is Ladenburg Thalmann & Co. Inc., and Threshold's legal counsel is Cooley LLP. Molecular Templates' legal counsel are Mintz Levin Cohn Ferris Glovsky and Popeo PC and Pillsbury Winthrop Shaw Pittman LLP.

**About the Proposed Transaction**

On a pro forma basis and based upon the number of shares of common stock to be issued in the merger, current Threshold shareholders would own approximately 34.4 percent of the combined company and current Molecular Templates shareholders would own approximately 65.6 percent of the combined company although the actual allocation will be subject to adjustment based on Threshold's net cash balance.

Concurrent with the execution of the Merger Agreement, Threshold made a bridge loan to Molecular Templates in the principal amount of $2 million. In the event that the transaction does not close by May 31, 2017, Threshold has agreed to make available further funding of up to $2 million on the same terms upon mutual agreement.

The transaction has been approved by the board of directors of both companies. The merger is expected to close in the second quarter of 2017, subject to the approval of the stockholders of each company as well as other customary conditions.

**Management and Organization**

Eric Poma, Ph.D., Molecular Templates' Chief Executive Officer, will become Chief Executive Officer of the combined company.  Following the Merger, the board of directors of the Company will consist of seven seats and will be comprised of two representatives of Molecular Templates; two representatives of the Company, and three representatives to be mutually agreed upon by Molecular Templates and the Company, with the Company's current chairman of the board of directors, Barry Selick, Ph.D., continuing to act as chairman of the board of the Company following the Merger.

Upon closing of the transaction, Threshold will change its name to Molecular Templates, Inc. and plans to change its ticker symbol on the Nasdaq Capital Market to MTEM.

60.     As noted in both the press release and Merger Agreement, Threshold stockholders would own approximately 34 percent of the combined company, and Defendant Selick, currently the chairman of Threshold's Board, will continue as chairman of the Board of Directors of the combined company.

**The Proxy Statement Contains Numerous Material Misstatements or Omissions**

61.     On May 15, 2017, Defendants filed, or caused to be filed, a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Threshold stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's

1    stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

2        62.    Specifically, as set forth below, the Registration Statement fails to provide Company

3    stockholders with material information or provide them with materially misleading information

4    concerning: (i) Threshold insiders' potential conflicts of interest; and (ii) the valuation analyses prepared

5    by Ladenburg in connection with the rendering of its fairness opinion.   Accordingly, Threshold

6    stockholders are being asked to vote for the Proposed Transaction without all material information at

7    their disposal.

8    ***Material Omissions Concerning Insiders' Potential Conflicts of Interest***

9        63.    The Registration Statement fails to disclose material information concerning the potential

10   conflicts of interest faced by Threshold management and the Board.

11       64.    The Registration Statement states that following the close of the Proposed Transaction,

12   certain members of Threshold's Board will continue with the new company and receive a variety of

13   benefits.   For example, Harold E. Selick and Defendant Hoffmann will continue as directors of the

14   combined company after the effective time of the merger, with Defendant Selick serving as the chairman

15   of the board of the combined company.   However, the Registration Statement fails to disclose the timing

16   and nature of all communications regarding future employment and/or benefits relating to Threshold's

17   management and directors, including who participated in such communications and when Molecular first

18   expressed its interest in retaining members of Threshold's Board following the merger.

19       65.    Communications regarding post-transaction employment opportunities during the

20   negotiation of the underlying transaction must be disclosed to stockholders.   This information is

21   necessary for stockholders to understand potential conflicts of interest of management and the Board, as

22   that information provides illumination concerning motivations that would prevent fiduciaries from acting

23   solely in the best interests of the Company's stockholders.

24       66.    The omission of this information renders certain portions of the Proxy Statement false

25   and/or materially misleading in contravention of the Exchange Act including, *inter alia*, the following

26   sections of the Proxy Statement: (i) "Background of the Merger"; and (ii) "Management Following the

27   Merger."

28

*Material Omissions Concerning Ladenburg's Financial Analyses*

67.     The Registration Statement describes Ladenburg's fairness opinion and the various valuation analyses it performed in support of its opinions.  However, the description of Ladenburg's fairness opinion and the underlying analyses fails to include key inputs and assumptions underlying these analyses.  Although Ladenburg bases its analysis on the historical and projected financial results of Threshold and Molecular, only the historical results are disclosed in the Registration Statement.  Furthermore, the Registration Statement fails to disclose the estimated future unlevered free cash flows of the Company used by Ladenburg in its analysis and some of its constituent line items.  Without this information, as described below, Threshold's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Ladenburg's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Threshold stockholders.

68.     Specifically, Ladenburg performed a *Discounted Cash Flow Analysis*, which was also presented to the Board.  The Registration Statement states that Ladenburg estimated a range of total enterprise values for Molecular based upon the present value of Molecular's estimated after-tax unlevered free cash flows.  However, estimated after-tax unlevered free cash flows are not disclosed in the Registration Statement.  Additionally, in performing this analysis, Ladenburg used financial projections containing revenue estimates through calendar year-end 2031 for both Molecular's MT-3724 and MT-4019 assets.  In arriving at the unlevered free cash flow figures, Molecular subtracted projections for cost of goods sold, research and development costs, general and administrative and marketing and selling expenses.  None of these figures are disclosed.

69.     Ladenburg's *Discounted Cash Flow Analysis* purportedly resulted in a range of total enterprise values between $158 million and $278 million—well above the total enterprise value of Molecular implied in the Proposed Transaction—$81 million.  Yet these conclusory statements by Ladenburg are materially misleading because Threshold stockholders have **no** information to assess the credibility of this analysis.  As Molecular is a private company, Threshold stockholders do not even have historic financial information for the company, with the exception of the one-year historic financial information provided in the Registration Statement.  Without disclosure of the projected financial

information for Molecular used by Ladenburg, and **approved by Threshold's management**, Threshold stockholders are being materially mislead regarding the value of the Proposed Transaction.

70.     When a bankers' endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Furthermore, the disclosure of projected financial information provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  This information is therefore material, and must be disclosed if Threshold stockholders are to make a fully informed decision.

71.     Without such undisclosed information, Threshold stockholders cannot evaluate for themselves whether the financial analyses performed by Ladenburg was based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Ladenburg's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

72.     The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

*Discounted Cash Flow Analysis*

Ladenburg estimated a range of total enterprise values for Molecular based upon the present value of Molecular's estimated after-tax unlevered free cash flows. Ladenburg analyzed certain internal financial analyses, financial projections, reports and othern information concerning Molecular prepared by the management of Molecular. Threshold reviewed and approved the Molecular financial projections before they were provided to Ladenburg. The financial projections contained revenue estimates through calendar year-end 2031 for both the MT3724 and MT4019 assets. Molecular then subtracted assumed cost of goods sold, research and development costs, general and administrative and marketing and selling expenses. Molecular assumed a 35% corporate tax rate when calculating unlevered free cash flow. In performing this discounted cash flow analysis, Ladenburg utilized discount rates ranging from 15% to 20%, which were selected based on the capital asset pricing model and the estimated weighted average cost of capital of the selected publicly traded early to mid-stage oncology companies. This discounted cash flow analysis assumed that Threshold has no terminal value after 2031.

The discounted cash flow analysis resulted in an implied total enterprise value between $158 million and $278 million, based on the upper and lower range of the discount rates that Ladenburg used in its analysis. This compares to Molecular's total enterprise value as per the merger agreement of approximately $81 million.

Proxy Statement, pp. 132-33.

73.   Based on the foregoing, Threshold public shareholders lack critical information necessary to evaluate whether the Proposed Transaction truly maximizes shareholder value and serves their interests. Moreover, without the key financial information and related disclosures, Threshold public shareholders cannot gauge the accuracy and reliability of the financial analyses performed by Ladenburg, and whether they can reasonably rely on its fairness opinions.

74.   Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction in the event that it is consummated and to recover damages resulting from Defendants' misconduct.

## FIRST CAUSE OF ACTION

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

75.   Plaintiff repeats and realleges each allegation as if fully set forth herein.

76.   As detailed herein, Defendants disseminated the false and misleading Proxy Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

77.   By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of Threshold.

78.   By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.   The Proxy Statement was prepared, reviewed, and/or disseminated by Defendants.   The Proxy Statement

misrepresented and omitted material facts, including material information about the unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets.  Defendants were at least negligent in filing and disseminating the Proxy Statement with these materially false and misleading statements and omissions.  Defendants have also failed to correct the Proxy Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

79.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction.  A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

80.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which Defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION

### Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

81.     Plaintiff repeats and realleges each allegation as if set forth herein.

82.     The Individual Defendants acted as controlling persons of Threshold within the meaning of Section 20(a) of the Exchange Act, as alleged herein.  By virtue of their positions as officers and directors of Threshold and their participation in and awareness of the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

83.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

84.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   Among other things, the Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.   Thus, they were directly involved in the making of that document.

85.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

86.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

87.    Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in Plaintiff's favor and in favor of the Class and against Defendants as follows:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as a representative of the Class, and appointing his counsel as class counsel;

B.    Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain the best available terms for stockholders;

C.    Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.    Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the wrongdoing;

E.    Awarding Plaintiff and the Class the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.    Granting such other and further equitable relief as this Court may deem just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated: June 20, 2017

**LEVI & KORSINSKY LLP**

By: ___*/s/ Rosemary M. Rivas*___
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Attorneys for Individual and Representative
Plaintiff Victor Pariso*

CLASS ACTION COMPLAINT; Case No. 17-cv-3557



| | 30 Broad Street, 24th Floor |
| --- | --- |
| | New York, NY 10004 |
| | T:212-363-7500 |
| | F:212-363-7171 |
| | www.zlk.com |

**CERTIFICATION OF NAMED PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, Victor V Pariso Jr , declare as to the claims asserted under the federal securities laws, as follows:

1. I have reviewed the Complaint and authorized its filing;

2. I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation;

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. I currently hold shares of Threshold Pharmaceuticals, Inc. My purchase history is as follows:

| Purchase Date | Stock Symbol | Shares Transacted | Price Per Share |
| --- | --- | --- | --- |
| 7/5/2016 | THLD | 3025 | .67 |
| 10/11/2016 | THLD | 5000 | .51 |
| 5/23/2017 | THLD | 2650 | .49 |

5. During the three years prior to the date of this Certification, I have not participated nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this June 6, 2017, at Scottsdale, Arizona.

Name: Victor V Pariso Jr

Signed: